AXELROD & CO., Plaintiff-Appellant,

v.

KORDICH, VICTOR & NEUFELD,
Defendant-Appellee.

No. 44, Docket 71–1369.

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1971.

Decided Oct. 18, 1971.

Frank R. Greenberg, New York City (Baar, Bennett & Fullen and Robert E. Smith, New York City, on the brief), for plaintiff-appellant.

Evan L. Gordon, New York City (Delson & Gordon, New York City, on the brief), for defendant-appellee.

Before FRIENDLY, Chief Judge, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal presents a perplexing question of first impression in this Court involving interrelated provisions and policies of the Securities Act of 1933 and the Securities Exchange Act of 1934. Specifically, can a nonmember firm successfully invoke the compulsory arbitration rules of an exchange over the opposition of a member firm?

Axelrod & Co., a member firm of the New York Stock Exchange (NYSE), appeals from an order of the District Court for the Southern District of New York, Thomas F. Croake, District Judge, granting the motion of Kordich, Victor & Neufeld (KVN), a nonmember firm, to stay the instant action pending arbitration under the rules of the NYSE. Since we agree with the district court's construction and application of the statutory provisions involved, we affirm.

## I.

On June 19, 1970, KVN contracted to sell to Axelrod 5000 shares of the

common stock of On Site Energy Systems Corporation for $54,750. Axelrod's refusal to accept tender resulted in a sell-out by KVN at a substantial loss. KVN instituted arbitration proceedings before the NYSE to recover the loss claimed to have been sustained as a result of Axelrod's breach of contract.

Before answering KVN's notice of arbitration, Axelrod commenced this action in the district court to rescind the contract on the ground that KVN had fraudulently misrepresented the On Site stock, in violation of the Securities Act of 1933, 15 U.S.C. § 77a et seq. (1970), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. (1970).[1] Axelrod also moved in the district court to stay the arbitration proceedings pending disposition of this action and obtained a temporary restraining order so providing (Lasker, D. J.). Pursuant to Section 3 of the Arbitration Act, 9 U.S.C. § 3 (1970), KVN cross-moved to stay this action pending arbitration at the NYSE.

The district court held that KVN could compel Axelrod to submit to the arbitration compelled by the NYSE rules. Accordingly, the court dissolved the temporary restraining order staying arbitration and stayed the instant action pending such arbitration. Axelrod appealed. Although neither party challenged our appellate jurisdiction, we entertained sufficient doubts about it as to make it seem desirable for Axelrod to obtain leave to take an interlocutory appeal under 28 U.S.C. § 1292(b) (1970). The district court issued a certificate under that section, and we granted leave to appeal, with the appeal to be decided on the briefs already filed and the argument previously heard.

## II.

■ We turn directly to the critical question of whether a nonmember brok-er-dealer firm may invoke the compulsory arbitration rules of the NYSE over the opposition of a member firm, the resolution of which requires reconciliation of provisions of the 1933 and 1934 Acts and the policies which underlie those provisions.

The 1934 Act established a statutory scheme of "supervised self-regulation" for stock exchanges. "This involves control of exchange markets by requiring or permitting national securities exchanges to adopt rules governing their practices and procedures and the business conduct of their members, and in each case imposes the responsibility for enforcement of these rules on the exchanges themselves." SEC, Report of Special Study of Securities Markets, H.R. Doc.No. 95, 88th Cong., 1st Sess., pt. 1, at 3 (1963). See Colonial Realty Corporation v. Bache & Co., 358 F.2d 178, 181 (2 Cir.), cert. denied, 385 U.S. 817 (1966); Silver v. New York Stock Exchange, 373 U.S. 341, 352 (1963).

Exchanges have responded to this self-regulatory scheme by promulgating rules governing the conduct of member firms. The 1934 Act requires that such rules be "just and adequate to insure fair dealing and to protect investors. . . ." 15 U.S.C. § 78f(d) (1970). Consistent with this requirement, the exchanges have broad authority to regulate exchange members' conduct:

"Nothing in this chapter shall be construed to prevent any exchange from adopting and enforcing any rule not inconsistent with this chapter and the rules and regulations thereunder . . . ." 15 U.S.C. § 78f(c) (1970).

■ In accordance with this policy of self-regulation, the constitution of the NYSE requires that all members arbitrate:

". . . any controversy between a non-member and a . . . member

---

1. The complaint states that the action arises under the 1933 and 1934 Acts, without specifying the provisions invoked. We assume without deciding that plaintiff purports to assert claims under Sections 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77l(2) and 77q(a) (1970); and under Sections 9(a) (4) and 10(b) of the 1934 Act, 15 U.S.C. §§ 78i(a) (4) and 78j(b) (1970).

firm . . . arising out of the business of such . . . member firm . . ., at the instance of such non-member. . . . ." NYSE Constitution, Article VIII, § 1.

Each member firm, by virtue of its admission, agrees to be governed by the Exchange's constitution and rules. When a transaction of purchase and sale of any security is effected, the contract is subject to all the provisions of the Exchange's constitution and rules, including the compulsory arbitration provisions. These provisions are binding on exchange members. Brown v. Gilligan, Will & Co., 287 F.Supp. 766, 770 (S.D.N.Y.1968). Cf. Crowley v. Commodity Exchange, 141 F.2d 182 (2 Cir. 1944); Daniel v. Board of Trade of City of Chicago, 164 F.2d 815, 819 (7 Cir. 1947). Clearly the provision of the NYSE constitution requiring a member firm to arbitrate a dispute with a nonmember at the request of the non-member is binding on Axelrod in the instant case.

 Axelrod argues, however, that its prior agreement to arbitrate is a "stipulation" waiving compliance with the provisions of the 1934 Act and is therefore void under Section 29(a) which provides:

"Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. § 78cc(a) (1970).

We hold that this non-waiver provision of the 1934 Act does not preclude enforcement of Axelrod's agreement to arbitrate here.

Section 29(a) of the 1934 Act must be read in conjunction with Section 28 (b) of that Act which provides in relevant part:

"Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action *on any person who has agreed to be bound thereby* . . . ." (Emphasis added) 15 U.S.C. § 78bb(b) (1970).

Axelrod as a member firm is required to arbitrate this dispute. Moreover, by instituting the arbitration proceeding, KVN has agreed to be bound by the NYSE arbitration rules.[2] Under Section 28(b)(2), therefore, KVN is a "person who has agreed to be bound thereby." Accordingly, if Section 28(b) is to be given effect, the instant dispute must be referrable to arbitration.

The leading case reconciling Section 29(a) with Section 28(b) held that certain arbitration agreements may be exempted from the invalidating language of the non-waiver provision. In Brown v. Gilligan, Will & Co., *supra*, 287 F. Supp. at 773–75, the district court, recognizing the central role of self-regulation of the exchanges in the enforcement of the federal securities laws, concluded that Section 28(b) excluded from the non-waiver provisions of the 1933 and 1934 Acts an agreement to arbitrate disputes between member firms of an exchange which were required by the exchange's constitution to be submitted to arbitration. The court noted:

"While § 29(a) may not on its face admit of any exemption, the language of § 28(b) of the 1934 Act does exempt 'any action taken by the authorities of . . . [an] exchange to

---

2. Article VIII, § 2, of the NYSE Constitution provides that the Board of Governors of the NYSE shall adopt rules governing the procedure for arbitration through the facilities of the Exchange. Under Rule 481 of the NYSE:

" . . . [A] non-member who wishes to institute proceedings pursuant to the provisions of Article VIII of the Constitution [¶¶ 1351–1357] against any [member firm] shall file with the Arbitration Director a concise statement of claim or controversy."

KVN complied with this rule on October 12, 1970 and thereby agreed to be bound by the Arbitration.

settle disputes between its members.' The action taken by AMEX in prescribing rules of the Exchange, binding on its members and making arbitration imperative, constitutes 'action taken by the authorities of such exchange to settle disputes between its members.' Therefore, the instant agreement to arbitrate, which owes its very existence to such rules of the Exchange, must be exempted from the scope of § 29(a) if § 28(b) is to be given effect." 287 F.Supp. at 774.

We approve of the *Brown* decision as to the proper relationship between Section 29(a) and Section 28(b) of the 1934 Act, and we hold that its rationale on this question should be extended to exempt from the non-waiver provisions an agreement by a member firm of an exchange to arbitrate a dispute between itself and a nonmember firm at the instance of the nonmember.[3]

### III.

The Supreme Court's decision in Wilko v. Swan, 346 U.S. 427 (1953), does not require a different result. In *Wilko* the Supreme Court considered Section 14 of the 1933 Act,[4] the non-waiver provision which is almost identical to Section 29(a) of the 1934 Act. There a customer of a brokerage firm signed an arbitration agreement prior to asserting a cause of action under the civil liabilities provisions of Section 12(2) of the 1933 Act. He then objected to arbitration. The Supreme Court held that the agreement to arbitrate a future controversy was a "condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision" of the Act, and therefore was void under Section 14.

The instant case is readily distinguishable. In *Wilko* the party seeking to avoid arbitration was a small investor and not a member firm of an exchange. The Supreme Court therefore was not required to consider the effect of Section 28(b) of the 1934 Act. The Court was not faced with the task, as we are, of reconciling the non-waiver provisions with Section 28(b), a provision designed to promote self-regulation of the exchanges.[5]

Moreover, the policy considerations relied on by the Supreme Court in *Wilko* are inapposite here. The Supreme Court found that the non-waiver provision there involved was designed to protect investors. 346 U.S. at 431. Without

---

3. We note that the District Court for the District of Massachusetts has rejected Brown v. Gilligan, Will & Co., *supra*, as well as Judge Croake's decision in the instant case. In In re Revenue Properties, MDL Dkt. No. 32 (D.Mass., filed March 22, 1971), the court, without any reasoned analysis and indeed without any reference whatever to Section 28(b) of the 1934 Act, concluded that "[T]his court perceives no necessity for or authority to join in the two decisions from the Southern District of New York in which an exception to the plain and unambiguous language of the two statutes [15 U.S.C. §§ 77n and 78cc(a) (1970)] was judicially engrafted." The Massachusetts court, by ignoring the exempting provision of Section 28(b), has avoided a basic canon of statutory construction, namely, that each provision of a statute must be given effect. Its decision would emasculate Section 28(b).

4. Section 14 of the 1933 Act provides:
 "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n (1970).

5. A highly respected commentator thinks that the Supreme Court might have decided *Wilko* differently if Section 28(b) had been involved:
 "Moreover, the result [reached in *Wilko*] might well be different in the case of an action based (expressly or by implication) on the 1934 Act—at least when the disputants are exchange members—in view of the provision in § 28(b) of that Act to the effect that nothing in the statute 'shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby.'" 3 Loss, Securities Regulation 1814 n. 430 (1961).

such provision, financial houses might escape statutory liability by taking advantage of the inferior bargaining position of customers. But the legislative policy of protecting investors will not be thwarted by compelling an exchange member to arbitrate, at the instance of a nonmember, a dispute which is arbitrable under the exchange's constitution. See Brown v. Gilligan, Will & Co., *supra*, 287 F.Supp. at 772.

 Having held that Section 28(b) of the 1934 Act exempts the instant arbitration under the rules of the NYSE from the invalidating effect of Section 29(a) of that Act, we likewise hold that Section 28(b) of the 1934 Act overcomes the non-waiver provision of Section 14 of the 1933 Act. While the 1933 Act has no counterpart to Section 28(b) of the 1934 Act, the latter section should apply to both Acts upon the facts here presented. There is no valid reason for holding that a controversy arising under the 1934 Act is arbitrable, while the same controversy asserting claims under the 1933 Act is not. It it unlikely that Congress intended such an inconsistent result. The two Acts are *in pari materia* and should be construed together as one body of law. Globus v. Law Research Service, Inc., 418 F.2d 1276, 1286 (2 Cir. 1969), cert. denied, 397 U.S. 913 (1970); Brown v. Gilligan, Will & Co., *supra*, 287 F.Supp. at 775; United States v. Morgan, 118 F.Supp. 621, 691 (S.D.N.Y.1953). As the court said in Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245 (3 Cir. 1968):

> "The non-waiver provision is almost identically worded in each Act . . . . The Act of 1934, accordingly, as indicated, is supplementary to that of 1933, except in its judicial remedy, and accordingly, the same logic is applicable to the Act of 1934, as is applicable to that of 1933, and, therefore, to both non-waiver sections."

We hold, on the facts of the instant case, that application of Section 28(b) of

the 1934 Act to exempt the instant arbitration from the non-waiver provision of Section 14 of the 1933 Act is reasonable, logical and in accord with the intent of Congress.

Affirmed.