Howard M. MILLER et al., Plaintiffs,

v.

Winfield H. SCHWEICKART et al., Defendants.

No. 74 Civ. 5089.

United States District Court,
S. D. New York.

Sept. 5, 1975.

Freeman, Meade, Wasserman, Sharfman & Schneider, New York City, Laurance V. Goodrich, Brooklyn Heights, N. Y., for plaintiffs; James A. Shanman, New York City, of counsel.

Lunney & Crocco, New York City, for defendants Schweickart & Co., Golashesky, Bennet, Schwerin, Tomasulo and Reimer; Charles A. Crocco, Jr., Luigi P. DeMaio, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs commenced this action against the defendants charging violations of the Securities Acts of 1933 and 1934. Plaintiffs were and are limited partners of Schweickart & Co. which until July, 1974 was actively engaged in the securities business as a broker-dealer and was a member firm of the New York Stock Exchange ("Exchange"). The defendants with two exceptions were and are general partners of Schweickart & Co.

Plaintiffs, upon the purchase of their limited partnership interests, executed secured demand collateralized notes as part of their limited partnership agreement which provided for the arbitration of any disputes arising under the agreement.[1] The complaint contains two causes of action. Count One alleges an individual and class action on behalf of all limited partners charging the defendants with fraud in violation of sections 17(a) and 22 of the Securities Act of 1933;[2] sections 10(b) and 27 of the Securities Exchange Act of 1934;[3] and Rule 10b–5[4] thereunder. Count Two alleges a derivative claim on behalf of Schweickart & Co., the partnership, alleging that certain defendants, including the general partners, conspired to defraud the partnership for their own account and profit. Schweickart & Co., the partnership and its general partners, in reliance upon the arbitration provision referred to above, move to stay all proceedings in this action and to compel plaintiffs pursuant to section 3 of the U. S. Arbitration Act[5] to submit their claims to arbitration.

We first consider the derivative claim. Heretofore, Edwards & Hanley, a defendant herein and member of the Exchange, moved for a stay of all proceedings in this action on the ground that the derivative claim asserted on behalf of Schweickart & Co., a member of the Exchange, was subject to the constitution and arbitration rules of the Exchange.[6] This Court then held that

---

1. Article XII, Section (e) of the agreement provides: "Any controversy arising out of or relating to this Agreement or the breach thereof shall be submitted to and settled by arbitration pursuant to the constitution and rules of the [New York Stock] Exchange * * *."

2. 15 U.S.C. §§ 77q(a), 77v.

3. 15 U.S.C. §§ 78j(b), 78aa.

4. 17 C.F.R. § 240.10b–5.

6. Article VIII, Section 1 of the New York Stock Exchange Constitution provides:
"Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy be-

**368**

since the derivative claim involved a dispute or controversy between members of the Exchange, the "non-waiver of rights" provision of the Securities Acts, section 14 of the Securities Act of 1933 [7] and section 29(a) of the Securities Exchange Act of 1934 [8] that would otherwise permit one to disavow an arbitration agreement and to present his claim to a federal judicial forum [9] is inapplicable.[10] A similar result is required as to the instant motion under the second cause of action. Since it is a derivative claim brought on behalf of Schweickart & Co., the dispute is between it, a member of the Exchange, and its general partners, allied members of the Exchange,[11] and is subject to arbitration. Accordingly, as to the second cause of action, a stay of proceedings is granted pending arbitration.

We next consider the first cause of action which presents different issues, since plaintiffs, limited partners, are not members of the Exchange or allied members.[12] Essentially, the issue is whether the arbitration provision contained in the "secured demand note and collateral agreement" between the limited partners and the partnership may be disavowed by the limited partners and

held unenforceable as against them under the *Wilko v. Swan* doctrine.[13] The collateral note is part of a uniform standard agreement required by the Exchange of its members in connection with capital contributions by limited partners.[14]

Plaintiffs in the individual and class action count allege that in the purchase of their limited partnership interests, they executed the secured demand notes, collateralized by marketable securities; further, that to induce such purchases the general partners made untrue statements of material facts and omitted to state material facts concerning the financial condition, operation and future prospects of Schweickart & Co. Accordingly, plaintiffs contend that the non-waiver of rights provision of the Securities Acts voids their consent to arbitration under *Wilko v. Swan*.

The defendants on the other hand urge that section 28(b) of the 1934 Act [15] governs with respect to the plaintiff. The latter provision was held to control in a controversy between a non-member and a member of the Exchange and the arbitration provision was held enforceable in *Axelrod v. Kordich, Victor & Neufeld*.[16] There, however, the

tween a non-member and a member or allied member or member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, * * * shall, at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Governors.

7. 15 U.S.C. § 77n.

8. 15 U.S.C. § 78cc(a).

9. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Starkman v. Seroussi*, 377 F.Supp. 518, 522–23 (S.D.N.Y.1974).

10. *Axelrod & Co. v. Kordich, Victor & Neufeld*, 451 F.2d 838 (2d Cir. 1971); *Brown v. Gilligan, Will & Co.*, 287 F.Supp. 766 (S.D. N.Y.1968).

11. *See* New York Stock Exchange Constitution Article VIII, Section 1; Article I, Section 3(d).

12. New York Stock Exchange Constitution Article I, Section 3(d).

13. 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

14. Defendants urge that the execution of the form agreements which contain the arbitration provision constitute a policy of self-regulation by the New York Stock Exchange, and as such should be enforced. However, these forms are not required in the instance of cash contributions by limited partners. In any event, no rule or regulation has been called to the Court's attention to support defendants' position that the arbitration provision, in this instance, reflects a policy of self-regulation.

15. 15 U.S.C. § 78bb(b), which provides: "Nothing in this chapter shall be construed to modify existing law (1) with regard to the binding effect on any member of any exchange of any action taken by the authorities of such exchange to settle disputes between its members, or (2) with regard to the binding effect of such action on any person who has agreed to be bound thereby, * * *."

16. 451 F.2d 838 (2d Cir. 1971).

member firm sought to disavow the arbitration provision which was binding upon it under the Exchange constitution, whereas the non-member sought to enforce it. The Court held the member to arbitration and distinguished *Wilko* on the ground that none of the policy considerations of protecting the non-member investor were present in *Axelrod*. The issue here is the reverse of *Axelrod* —whether a member of the New York Stock Exchange may hold a non-member who is not bound by the Exchange constitution—in essence, whether the protection of investors underlying the Supreme Court ruling in *Wilko v. Swan* is applicable to plaintiffs.

The protection of investors rationale of that holding seems equally applicable to plaintiffs. Although denominated limited partners, in fact they were investors since they had no voice in the affairs of the partnership. Indeed, the agreement specifically provides that plaintiffs "shall not take part in the management of or conduct any business for the partnership."

The partnership itself is a separate entity and limited partnerships are authorized by state statute. Schweickart & Co., the limited partnership, was organized and existed under the laws of the New York State Court of Appeals. The New York State Court of Appeals has equated a limited partner to a corporate shareholder as in a " 'position analogous to that of a corporate shareholder', an investor who likewise has limited liability and no voice in the operation of an enterprise."[17] And our Court of Appeals, in describing a limited partner under New York law, states ". . . in the main, a limited partner is more like a shareholder . . . ."[18] Thus, plaintiffs are, in relation to the firm, no more than ordinary shareholders with a title.

Furthermore, the fiduciary duty of fair dealing owed by a general partner to a limited partner is no less than that owed by a corporate director to a shareholder.[19] The form of the enterprise does not diminish the duty of fair dealing by those in control of the investments.

The numerous cases in the courts alleging claims against limited partnerships and their general partners, based upon alleged violations of the federal securities acts in the purchase of limited partnership interests suggest, without passing upon the merits of the claims, that the protection of the Securities Acts should be brought into play for the protection of such purchase(s).[20] As a rule, a limited partner is no more sophisticated than the average investor who purchases stock in a corporation. He, too, requires the protection afforded to the purchasing public contemplated by the Securities Acts, which is the basis of the *Wilko v. Swan* rationale. No doubt there may be investors who purchase limited partnerships who are sophisticated and knowledgeable, but the test to be applied is an objective one applicable to a class of investors in need of protection.[21] To apply a subjective test in each instance would require a trial within a trial.

The motion for a stay of the action as to the first count and to compel arbitration pursuant to the Constitution and rules of the Exchange is denied.

17. *Lichtyger v. Franchard Corp.*, 18 N.Y.2d 528, 536, 277 N.Y.S.2d 377, 383, 223 N.E.2d 869, 873 (1966). *See also Ruzicka v. Rager*, 305 N.Y. 191, 111 N.E.2d 878 (1953). *Cf. Plasteel v. Eisenberg*, 170 F.Supp. 100 (D. Mass.1959); *Lynn v. Cohen*, 359 F.Supp. 565 (S.D.N.Y.1973).

18. *Klebanow v. New York Produce Exchange*, 344 F.2d 294, 297 (2d Cir. 1965).

19. *Riviera Congress Associates v. Yassky*, 18 N.Y.2d 540, 547, 277 N.Y.S.2d 386, 223 N.E. 2d 876 (1966).

20. *See, e. g., Lerman v. Tenney*, 295 F.Supp. 780, 783 (D.C.1969).

21. *Cf. SEC v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); *Schur v. Salzman*, 365 F.Supp. 725, 728 (D.C.1973).