### SHEET METAL WORKERS' ASSOCIATION LOCAL 19, Plaintiff,

v.

### J.S. MECHANICAL CONTRACTORS, INC., Defendant.

#### Civil Action No. 96–4146.

United States District Court, E.D. Pennsylvania.

Aug. 6, 1997.

Bruce E. Endy, Spear, Wilderman, Borish, Endy, Spear and Runckel, Philadelphia, PA, for Plaintiff.

Daylin B. Leach, Allentown, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff Sheet Metal Workers' Association Local 19 ("Local 19" or "Plaintiff") has brought this action pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to confirm an arbitration award against Defendant J.S. Mechanical Contractors, Inc. ("J.S. Mechanical" or "Defendant"). Before the Court is Plaintiff's Motion for Summary Judgment, which we grant for the reasons stated below.

## BACKGROUND

The facts viewed in the light most favorable to J.S. Mechanical, with all reasonable

inferences drawn in its favor, are as follows. Local 19 and J.S. Mechanical were parties to a collective bargaining agreement effective from June 1, 1989, until May 31, 1992 (the "1989 CBA"). The 1989 CBA is signed on Joachim D. Schwiedop ("Mr.Schwiedop"), the President of J.S. Mechanical. The 1989 CBA was succeeded by a bargaining agreement that became effective June 1, 1992 (the "1992 CBA"). The 1992 CBA is not signed by a representative of either party. Instead, Local 19 claims that on May 29, 1992, it received via fax a letter (the "May Letter") signed by Mr. Schwiedop confirming J.S. Mechanical's intent to be bound by the 1992 CBA. Defendant disputes the authenticity of the May Letter and argues that it never entered into the 1992 CBA. We describe both the letter and Defendant's attempts to cast doubt on its validity in considerable detail *infra*. For present purposes it is sufficient merely to note the dispute.

Despite Defendant's contention that it did not enter into the 1992 CBA, Mr. Schwiedop wrote Local 19 at least three times after May 29, 1992, indicating that Defendant had no contracts for sheet metal work worth more than $5,000. Such notice was a requirement under Article II, Section 3 of the 1992 CBA. In late 1993 or early 1994, Local 19 discovered that J.S. Mechanical had allegedly violated the CBA by performing two sheet metal jobs without calling for sheet metal workers. Pursuant to the CBA's grievance and arbitration clause, Local 19 filed a grievance with a joint adjustment board ("JAB") comprised of an equal number of union and employer appointees. The Sheet Metal Contractors Association of Central Pennsylvania ("the Contractors Association") sent J.S. Mechanical notice of the hearing (scheduled for April 5, 1994) via certified mail, return receipt requested, to the proper address. Delivery of this letter was not accepted, however, and the letter was returned to the Contractors Association. After a hearing conducted in the absence of any J.S. Mechanical representative, the JAB unanimously awarded Local 19 $30.33 per hour worked on the disputed projects. The JAB notified J.S. Mechanical of the award by letter dated April 11, 1994. J.S. Mechanical never appealed or moved to set aside the JAB's April 1994 order.

On May 7, 1995, Local 19 received a fax from "Shirley" at J.S. Mechanical which stated that "[w]e didn't have a contract" but offered to pay Local 19 benefits, not wages, for the disputed projects in an effort to settle the dispute.[1] Local 19 refused the offer and, in early 1996, requested a second JAB hearing to determine the number of hours for which J.S. Mechanical would have to pay. The Contractors Association again notified J.S. Mechanical of the hearing (scheduled for April 8, 1996) by certified mail, return receipt requested, to the proper address. Once again, delivery of this notice was not accepted and the letter was returned to the Contractors Association. After a hearing again held in J.S. Mechanical's absence, the JAB unanimously awarded Local 19 $14,088.29 for the 464.5 hours of work performed on the two projects. J.S. Mechanical received notice of the JAB award, dated April 30, 1996, on May 14, 1996. That same day J.S. Mechanical's secretary and treasurer, Shirley Schwiedop, wrote a letter to the JAB claiming that the award was a mistake and that J.S. Mechanical did not have a contract with Local 19. A copy of this letter was also sent to Peter W. Hirsch, Regional Director of the Fourth Region of the National Labor Relations Board. At no time, however, did J.S. Mechanical appeal the decision or move to set it aside.

On June 4, 1996, Local 19 filed this action seeking to enforce the $14,088.29 JAB award against J.S. Mechanical.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to

---

1. Defendant objects to Plaintiff's reference to this settlement offer in the instant motion. *See* Fed. R.Evid. 408. Without ruling on the merits of the objection, we will simply exclude it from our analysis. We note, however, that to the extent that we would consider the offer, we would have to view it in the light most favorable to Defendant, i.e. as a denial of liability.

resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)).

■■■ Local 19 argues for summary judgment on two grounds. First, it claims that the JAB's award must be enforced given the special deference such awards are accorded by federal courts. Plaintiff correctly argues that where parties to a CBA have agreed to submit disputes to a joint labor-management grievance committee, the scope of a district court's review in a proceeding to confirm the committee's award is "exceedingly narrow." *Eichleay Corp. v. Intern. Ass'n of Iron Workers*, 944 F.2d 1047, 1055–56 & n. 7 (3d Cir.1991); *see also Service Employees International Union Local 36, AFL–CIO v. City Cleaning Company, Inc.*, 982 F.2d 89, 92 (3d Cir.1992). The Supreme Court has explained that

> [b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an

arbitrator as an appellate court does in reviewing decisions of lower courts. *United Paperworkers International Union v. Misco*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Thus, a district court may vacate an award only on very limited grounds, such as upon a showing of arbitrator misconduct, or when an award violates public policy or "does not draw its essence from the collective bargaining agreement." *Eichleay Corp.*, 944 F.2d at 1056; *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 74 n. 13 (3d Cir.1985). Local 19 argues that no such grounds are present in this case, thus the arbitration award must be confirmed.

■■■ Local 19's second argument is that J.S. Mechanical's failure to move to set aside the award in a timely fashion precludes it from contesting the award at this point. Indeed, the Third Circuit has clearly held " 'if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding.' " *City Cleaning Company*, 982 F.2d at 93 (quoting *Service Employees International Union Local No. 36, AFL–CIO v. Office Center Services, Inc.*, 670 F.2d 404, 412 (3d Cir.1982)); *see also Eichleay*, 944 F.2d at 1060–62. Failure to raise the defenses within the time limit prescribed by state law bars the defendant from raising them in § 301 confirmation proceedings held thereafter. *City Cleaning Company*, 982 F.2d at 93; *Office Center Services*. 670 F.2d at 412. The time limit in Pennsylvania is thirty (30) days. *See* 42 Pa. Cons. Stat. Ann. § 7314(b)(Purdon's 1982); *City Cleaning Co.*, 982 F.2d at 93. The rule is consistent with the federal policies of promoting finality of arbitration and quickly resolving labor disputes. *Office Center Services*, 670 F.2d at 412. Plaintiff argues that we must act consistently with these policies and confirm the JAB award without considering the merits of Defendant's arguments.

■■■ In response, Defendant argues that we should not confirm the JAB award because Defendant denies having entered into the contract that would give rise to the duty to arbitrate Local 19's grievance in the first

**520**

place. More precisely, Defendant contends that summary judgment is inappropriate because there is a factual dispute regarding whether it was a party to the 1992 CBA.[2] Though Defendant directs us to no cases in support of this argument, we have found substantial authority for its position in a series of Supreme Court decisions beginning with *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

In *Wiley,* the question presented was whether the merged employees of a successor company were covered by a bargaining agreement to which their previous employer had been a party. The Court held that this question was a matter of substantive arbitrability that must therefore be decided by the court rather than the arbitrator. *Id.* at 546–47, 84 S.Ct. at 912–13. Eight years later, in *International Union of Operating Engineers, Local 150, AFL–CIO v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), the Court held that, while it was for the arbitrator to decide whether a particular grievance was barred by laches, "nothing we say here diminishes the responsibility of a court to determine whether a union and employer have agreed to arbitration. That issue, as well as the scope of the arbitration clause, remains a matter for judicial decision." *Id.* at 491, 92 S.Ct. at 1713. The Court again reaffirmed this rule in *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), where it held that it was for the court, not the arbitrator, to decide whether the parties intended to arbitrate grievances concerning certain layoffs. Relying on the so-called *Steelworkers Trilogy,* the Court articulated four principles, two of which are relevant here.[3] First, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' " *Id.* at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353). The second, "which follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649, 106 S.Ct. at 1418. The Court explicitly reaffirmed *Wiley* in its discussion of the second principle. *Id.*

Finally, recent Third Circuit decisions confirm our power to determine whether a valid agreement to arbitrate exists before enforcing an arbitrator's award or compelling arbitration pursuant to an alleged agreement. *See Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 126–27 (3d Cir.1994); *Laborers' Intern. Union v. Foster Wheeler Energy Corp.,* 26 F.3d 375, 398–99 (3d Cir.1994); *see also PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) ("Before compelling an unwilling party to arbitrate, § 4 [of the Federal Arbitration Act, 9 U.S.C. § 4] . . . requires the court to engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."); *Local Union 42 v. Absolute Environmental Services,* 814 F.Supp. 392, 398 (D.Del.1993).

We therefore conclude that we must examine whether the parties had a valid agreement to arbitrate the grievance that resulted in the instant JAB award before we confirm this award against Defendant. In making this determination, the JAB's determination is entitled no deference insofar as it constitutes an implicit finding that J.S. Mechanical was a party to the 1992 CBA and therefore had a duty to arbitrate Local 19's grievance.[4] If we conclude that Defendant

**2.** Though Defendant does not specifically make the point, it would probably also argue that § 7314's thirty day limit does not preclude it from contesting the award now because it never agreed to resolve this dispute via arbitration in the first place.

**3.** The cases comprising the trilogy are *Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), *Steelworkers v. War-* *rior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**4.** We say "implicit finding" because our review of the two JAB orders reveals no explicit finding on its part that J.S. Mechanical was a party to the 1992 CBA. *See* Pl.'s Ex. 13, 17.

was indeed a party to the 1992 CBA, however, the scope of our review becomes limited to the "exceedingly narrow" review defined *supra.* We now examine the evidence regarding whether J.S. Mechanical was a party to the 1992 CBA.

Local 19 claims that on May 29, 1992, at 2:38 P.M., it received the following letter via fax:

Gentlemen:

This letter is to serve as confirmation that J.S. Mechanical will comply with the new collection [sic] Bargaining Agreement; agreed between Sheet Metal Workers' Local 19 and Sheet Metal Contractors Association of Central Pennsylvania.

Yours truly:

Joachim D. Schwiedop

Pl.'s Ex. 4. J.S. Mechanical's facsimile identification appears at the top of the May Letter, just above J.S. Mechanical's letterhead, and the name "J. Schwiedop" is signed under the printed name at the bottom. Local 19 has also included an affidavit made by its Business Representative, William Dorward, stating "that the union received this letter by facsimile machine at the union office on the day, date and time specified at the top of the document." Dorward Aff., ¶ 3.

Defendant does not argue that Mr. Schwiedop lacked the authority to bind it to such an agreement, nor does it contend that the CBA, if valid, would not require Local 19's grievance to be resolved by arbitration. Defendant simply argues that the May Letter is a forgery. In support of this contention, Defendant includes three exhibits with its brief: (1) its Answer to the Complaint, which includes an affirmative defense stating that "[t]he Defendant never entered into an extension of any agreement with the Union which would cover the relevant period"; (2) a letter dated May 2, 1997, from its counsel to Plaintiff's counsel stating that "[a]s I explained on the phone, my client has some concerns about the authenticity of the 5/29 Agreement. You indicated to me that you would make an effort to obtain the original and let me know when this was accomplished, so that I may inspect it."; and (3) a second letter dated May 6, 1997, in which its counsel inquires of Plaintiff's counsel wheth-

er he has "made any progress in locating the original of the May 19th [sic] letter? I would appreciate if you would let me know."

Defendant has submitted no affidavit, deposition testimony, or answer to an interrogatory in which Mr. Schwiedop himself (or another party with knowledge) disputes the authenticity of the May Letter. Instead, Defendant's counsel asserts in his brief that Mr. Schwiedop has always denied either signing or sending that letter. See Def.'s Br. at unnumbered pp. 1, 5. Defendant's counsel also claims that the following cast doubt on the letter's authenticity: (1) the fact that Plaintiff's counsel never produced an original copy; (2) the fact that the May Letter is signed "J. Schwiedop" under the printed name whereas, in other correspondence from Mr. Schwiedop, either "J.D. Schwiedop" or "Joachim D. Schwiedop" is scrolled above the printed name; and (3) speculation that J.S. Mechanical's facsimile identification could have been typed in later.

On this record, we find no genuine issue of material fact concerning the authenticity of the May Letter. Defendant has failed to submit sufficient evidence on which a reasonable jury could return a verdict in its favor. Neither counsel's references in the brief to Mr. Schwiedop's alleged denials nor Defendant's Answer creates a factual dispute under Rule 56. *See Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508, 511 (3d Cir.1994) ("Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the nonmovant party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact.")(internal citation omitted). Likewise, with respect to the variations in the signature, Defendant has submitted no evidence suggesting a forgery, such as a report from a handwriting expert or an affidavit from Mr. Schwiedop stating that he never signs his name in the manner in which it appears on the May Letter. Further, the fact that Plaintiff could not produce a hard copy of the letter is inconsequential because the fax itself is sufficient evidence of the

contract.[5] Finally, the charge that the facsimile identification could have been forged is unsubstantiated.[6]

 Having found no genuine issue of material fact concerning the May Letter's authenticity, we conclude that J.S. Mechanical was bound by the CBA effective June 1, 1992, and therefore had a duty to submit Local 19's grievance to arbitration. This conclusion compels dismissing Defendant's remaining arguments in opposition to summary judgment as meritless. First, Defendant contests the propriety of notice of the JAB's April 5, 1994, and April 8, 1996, hearings. Defendant's undisputed failure to file a motion to modify, correct or vacate the JAB award within thirty days of either the April 11, 1994, or April 30, 1996, orders, bars it from raising this argument now as a defense in the confirmation proceeding. *See City Cleaning Co.*, 982 F.2d at 93–94; *Office Center Services*, 670 F.2d at 412; *see also Electrical Workers, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962 (10th Cir.1987)(holding that defendant was barred from raising defense of inadequate notice because defendant failed to move to vacate arbitration award within time prescribed by state law). Second, Defendant disputes the JAB's computation of the number of hours worked on the disputed projects. Given the deference due the JAB's award, this is precisely the sort of determination that we must not disturb. *See United Paperworkers International Union*, 484 U.S. at 37–38, 108 S.Ct. at 370–71.

We therefore grant Plaintiff's Motion for Summary Judgment. An appropriate Order follows.

### ORDER

AND NOW, this 6th day of August, 1997, upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's response thereto, it is hereby ORDERED as follows:

(1) that Plaintiff's Motion is GRANTED;

(2) that the joint adjustment board's orders dated April 11, 1994, and April 30, 1996, are hereby CONFIRMED; and

(3) that JUDGMENT is ENTERED in favor of Plaintiff and against Defendant in the amount of $14,088.29 together with counsel fees and costs of this action.

---

**5.** Defendant notes in passing that "[t]he admissibility of the May 29th letter itself is problematic since it arguably violates the best evidence rule. F.R.E. 1002." Def.'s Br. at unnumbered pp. 4–5. Assuming *arguendo* that the fax is not itself an original for purposes of this rule, Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed.R.Evid. 1003. Defendant has failed to establish any genuine question as to its authenticity or unfairness under the circumstances.

Defendant also asserts in its brief that "[d]espite the fact that all previous correspondence which had been faxed by J.S. Mechanical was followed with a hard copy, no hard copy exists in this case." Def.'s Br. at unnumbered p. 4. Defendant, however, has submitted no evidence of previous correspondence in support of this assertion.

**6.** Defendant does not argue that the statement denying the existence of the contract contained in Shirley Schwiedop's May 14, 1996, letter to the JAB is evidence weighing against summary judgment. Even if Defendant did, however, we would find this statement—in the face of the May Letter evidencing such a contract—to be a "mere scintilla of evidence" insufficient to support a verdict in its favor. *See Williams*, 891 F.2d at 460 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11).