**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED FOOD & COMMERCIAL
WORKERS INTERNATIONAL UNION,
LOCAL NO. 7,

      Plaintiff - Appellant,

v.

KING SOOPERS, INC.,

      Defendant - Appellee.

No. 12-1409

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:11-CV-02449-BNB-KMT)**

---

John P. Bowen (Jamie R. Scubelek, Associate General Counsel, on the briefs), United
Food and Commercial Workers International Union Local No. 7, Wheat Ridge, Colorado,
for Plaintiff – Appellant.

Raymond M. Deeny, (Matthew M. Morrison with him on the brief), Sherman & Howard
L.L.C., Denver, Colorado, for Defendant – Appellee.

---

Before **HARTZ, HOLLOWAY,** and **HOLMES,** Circuit Judges.

---

**HARTZ,** Circuit Judge.

The United Food and Commercial Workers International Union, Local No. 7 (the Union) sued King Soopers, Inc. under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, to enforce an arbitration award. The United States District Court for the District of Colorado ruled that the award did not draw its essence from the Union's collective bargaining agreement (CBA) with King Soopers and refused to enforce it. We reverse. Although King Soopers could have brought a timely action to vacate the award on the ground adopted by the district court, it did not do so. As we decided in *International Brotherhood of Electrical Workers, Local Union No. 969 v. Babcock & Wilcox*, 826 F.2d 962 (10th Cir. 1987), it therefore cannot raise that defense against the Union's action to enforce the award. For the same reason, we also hold that King Soopers cannot raise the defense that the arbitrator lacked authority to impose a remedy. We have jurisdiction under 28 U.S.C. § 1291 and reverse with instructions to enforce the award.

## I.    BACKGROUND

The Union represents some of the employees of King Soopers, which operates retail grocery stores throughout Colorado. The CBA between King Soopers and the Union provides for arbitration of grievances.

In 2002 an employee filed a grievance complaining that King Soopers had created a hostile work environment when it failed to protect him from a disagreeable customer.

2

For reasons not disclosed by the record, the processing of the grievance was prolonged and an arbitration hearing was not held until February 2011. In a decision issued on June 3, 2011, the arbitrator concluded that the dispute was arbitrable even though it related to customers, who are not subject to the CBA. And based on statutes providing workplace protections, the policies of King Soopers' parent company, and other considerations, he concluded that King Soopers had a duty to protect employees against a hostile work environment and found that King Soopers had breached that duty. He ordered King Soopers to "take all steps necessary" to protect against a hostile work environment, including establishing a "zero-tolerance policy for violence, with appropriate notices to employees and the general public," and excluding the problematic customer "until the parties are satisfied with his behavior." Aplt. App., Vol. II at 120. King Soopers neither complied with the award nor sought to vacate it in court.

On September 16, 2011 (after expiration of the time to seek to vacate the award), the Union filed its complaint in federal district court to enforce the award under § 301 of the LMRA. It filed an amended complaint 11 days later. King Soopers answered that the award was unenforceable for various reasons, including (1) that the parties did not agree to arbitrate disputes relating to a hostile work environment created by a customer; (2) that the award conflicted with the CBA's reservation to King Soopers of the right to promulgate workplace policies; (3) that nothing in the CBA authorized the award and the arbitrator had "unlawfully imposed his own brand of industrial justice," Aplt. App.,

Vol. II at 11; and (4) that the arbitrator did not have authority to impose a remedy once he determined that the CBA had been violated. Both parties moved for summary judgment.

The district court granted summary judgment for King Soopers. It ruled that King Soopers' affirmative defenses were time-barred because they could have been, but were not, raised as the basis for an action to vacate the award within the 90-day limitations period under the Colorado Uniform Arbitration Act, C.R.S. § 13-22-223.[1] *See Babcock & Wilcox*, 826 F.2d at 964 (timeliness of action under LMRA § 301 to vacate arbitration award is determined by reference to appropriate state statute). Nevertheless, it declined to enforce the award because the award did not draw its essence from the CBA. The Union appeals.

## II.    DISCUSSION

"As in other cases in which the district court grants summary judgment, we review the grant of summary judgment in a labor arbitration case de novo." *Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union*, 24 F.3d 86, 87 (10th Cir. 1994). We apply "the same standards that the district court should have applied." *Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] The limitations period was expanded to 91 days (13 weeks), effective July 1, 2012. *See* S. 12-175, 68th Gen. Assemb., 2d Reg. Sess. (Colo. 2012).

4

This appeal is controlled by our decision in *Babcock & Wilcox*, 826 F.2d 962. That case involved a dispute between Babcock & Wilcox (B&W) and the International Brotherhood of Electrical Workers, Local Union No. 969 (Local 969). A joint conference committee (JCC) had resolved a grievance by ordering B&W to pay additional travel reimbursements. *See id.* at 964. B&W denied receiving notice of the hearing before the JCC, but it did receive notice of the award. *See id.* It responded to the notice by contending that a different procedure should have been followed in the dispute and that the grievance should not have been submitted to the JCC. *See id.* B&W did not comply with the award or go to court to vacate it within the 90-day limit set by Colorado law. *See id.* After expiration of the 90 days, Local 969 filed an enforcement action in federal court under § 301 of the LMRA. *See id.* B&W answered that the award was unenforceable because B&W had not received notice of the JCC hearing and the JCC lacked jurisdiction to decide the dispute. *See id.* The district court did not consider the merits of B&W's defenses because B&W had not moved to vacate the award within the limitations period. *See id.*

We affirmed. We held that "the passing of the time limitation period for an action to vacate an arbitration award completely bars, in a subsequent confirmation proceeding, the raising of . . . defenses" that "could have been raised as grounds to vacate the award." *Id.* at 964–65. We specifically noted that B&W could have raised in proceedings to vacate the award both its claim that the JCC lacked jurisdiction and its claim that it had

5

not received notice of the hearing. *See id.* at 965, 966. We supported our ruling by explaining that time is of the essence in resolving labor disputes:

> [T]he role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award. In addition to cutting off stale defenses, a 90-day limitations period such as that specified in the Colorado statute serves the federal policy of favoring voluntary arbitration as the most expedient method of resolving labor disputes. The purpose of the relatively short limitations period is to accord the arbitration award finality in a timely fashion. To permit a party to forego [sic] a timely challenge to the validity of an award and then raise its objections in an otherwise summary confirmation proceeding would be contrary to the policy of promoting quick and final resolution of labor disputes.

*Id.* at 966 (citations and internal quotation marks omitted).

We cannot distinguish *Babcock & Wilcox* from this case. King Soopers has not suggested, and we cannot see, why it could not have gone to court to vacate the arbitrator's award on the same grounds that it later invoked to oppose its confirmation. Under the rule of *Babcock & Wilcox*, it cannot evade the time limit to bring an action to vacate an award by waiting until an enforcement proceeding before it raises its challenge.

Our conclusion is supported by the decisions of the other circuits to address the issue. In *Sheet Metal Workers International Ass'n, Local Union No. 36 v. Systemaire, Inc.*, 241 F.3d 972, 976 (8th Cir. 2001), a union sued under § 301 to enforce an award seven months after it had been issued. Systemaire had never tried to vacate the award, and the 90-day time limit for doing so had expired. *See id.* at 975–76. Nevertheless, it asserted that the award was unenforceable because it did not draw its essence from the CBA. *See id.* The district court did not address the merits of Systemaire's defense and

granted summary judgment for the union based solely on the untimeliness of Systemaire's challenge. *See id.* at 975. The Eighth Circuit affirmed, reasoning that the trial court was precluded from considering whether the award drew its essence from the CBA because Systemaire had failed to timely move to vacate the award. *See id.* at 976. Similarly, in *Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994), a joint arbitration board had issued two awards against Lemoncello (the employer), Lemoncello never moved to vacate or modify them, and the union sued to enforce them after expiration of the limitations period to move to vacate them. *See id.* at 679–80. Lemoncello asserted that they were unenforceable because they did not draw their essence from the CBA. *See id.* at 681. The Seventh Circuit held that Lemoncello was barred from attacking the awards because he had not challenged them within the required time period. *See id.* It said that "[t]he well settled case law in this circuit holds that failure to challenge an arbitration award within the applicable limitations period renders the award final." *Id.* (internal quotation marks omitted). It proceeded to conclude, "for the sake of completeness," that the awards did draw their essence from the CBA, but only after noting that "we are not obligated to do so in light of our disposition of the statute of limitations issue." *Id.* at 682. *See also Serv. Emps. Int'l Union, Local No. 36 v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 406 n.5, 412 (3d Cir. 1982) (rejecting all of employer's defenses (which included contention that the grievance committee's decision did not draw its essence from the CBA) because employer had not moved to vacate the award within the limitations period).

7

The authority cited by King Soopers is readily distinguished. First, King Soopers relies on the following language in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960): "[A]n arbitrator . . . does not sit to dispense his own brand of industrial justice. . . . [H]is award is legitimate only so long as it draws its essence from the [CBA]. When the arbitrator's words manifest an infidelity to this obligation, courts have *no choice* but to refuse enforcement of the award." (emphasis added). But there was no issue in *Enterprise* about the timeliness of the challenge to the enforcement of the arbitrator's award, and the Supreme Court saw no need to address the matter.

There is nothing peculiar about ruling that a potentially meritorious argument is barred by delay in raising it. As the Supreme Court has pointed out, "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose . . . ." *United States v. Kubrick*, 444 U.S. 111, 125 (1979). In the specific context of arbitration, the Second Circuit has explained that "[t]he role of arbitration as a mechanism for speedy dispute resolution disfavors delayed challenges to the validity of an award." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984). Hence, "[w]hen the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." *Id.* That is particularly true in labor arbitration, where labor peace is threatened by the prolongation of disputes. *See Posadas de Puerto Rico Assocs., Inc. v.*

8

*Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 483 (1st Cir. 1989) ("[A] brief window of opportunity [for challenging labor arbitration awards] abets the speedy adjudication of workplace grievances, promoting both the smooth operation of efficient mechanisms for private dispute resolution established in [CBAs] and the federal interest in industrial stability.").

The five lower-court cases cited by King Soopers also do not support its assertion that courts can always "independently review[] the enforceability of an arbitrator's award, even when the party opposing enforcement has waived its affirmative defenses by failing to move to vacate the award within the applicable limitations period." Aplee. Br. at 24. We discuss each.

In *D.H. Blair & Co. v. Gottdeiner*, 462 F.3d 95 (2d Cir. 2006), timeliness was not an issue. Both parties had moved to vacate in part and enforce in part within 90 days after the award had been issued. *See id.* at 101–02. Likewise, timeliness was not raised by the parties or addressed by the court in *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 61 (2d Cir. 2003) (Hoeft sought enforcement a month after award was issued and MVL responded by moving to vacate), *overruled on other grounds by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 585 (2008), or in *Local 339 United Service Workers Union v. Advanced Ready Mix Corp.*, No. 12-CV-4811(RRM)(VMS), 2013 WL 685447 (E.D.N.Y. Feb. 24, 2013).

King Soopers can get slightly more sustenance from *New York City District Council of Carpenters Pension Fund v. Eastern Millennium Construction, Inc.*,

9

No. 03 Civ. 5122(DAB), 2003 WL 22773355 (S.D.N.Y. Nov. 21, 2003). First the court said that the opponent of enforcement of the arbitration award had "made no showing as to any of the statutory grounds for vacation, correction or modification." *Id.* at *2. Appended to that sentence was a footnote stating that the opponent had "waived its right to contest confirmation" by not filing a timely motion to vacate. *Id.* at *2 n.2. The court then proceeded, however, to state, "Furthermore, the arbitrator . . . acted within the authority given to him by the Collective Bargaining Agreement." *Id.* at *2. One might infer that the court was holding that despite the waiver it had an obligation to examine whether the arbitrator had authority to issue the award. But that may read too much into the opinion. It is not unusual for courts to provide alternative grounds for their decisions. In any event, if the court was adopting the view advanced by King Soopers, it provides no reasoning to support that view.

Finally, King Soopers asserts that the Ninth Circuit in *Brotherhood of Teamsters Local No. 70 v. Celotex Corp.*, 708 F.2d 488 (9th Cir. 1983), "reject[ed] the argument that 'a court faced with a petition to confirm [an arbitration award] has no choice but to confirm the award entirely if the party opposing the confirmation had failed to previously move to vacate the award within the applicable statutory period.'" Aplee. Br. at 24–25 (quoting *Celotex Corp.*, 708 F.2d at 491 n.4; brackets in original). This misreads the opinion. Although the court noted that "none of the cases the Union cites supports th[at] contention," it expressly declined to resolve the issue because it did not need to address it under the facts of the case. *Celotex Corp.*, 708 F.2d at 491 & n.4. Moreover, the Ninth

10

Circuit's reluctance to endorse the view that courts must *always* confirm an award that was not timely challenged is not necessarily inconsistent with our holding. The reluctance could stem from concern about awards challenged on grounds that could not have been raised in a timely motion to vacate, awards whose *substance* is contrary to public policy (such as an award requiring racial discrimination), or awards imposed on persons not parties to the arbitration agreement.

Accordingly, we hold that the district court erred in setting aside the arbitration award on the ground that it did not draw its essence from the CBA.

As an alternative ground to affirm the district court's judgment, King Soopers argues that even if the arbitrator had authority to decide that it had breached the CBA, he had no authority to order a remedy. But our decision in *Babcock & Wilcox* also disposes of this argument. B&W had argued that the JCC lacked jurisdiction to hear the particular dispute because the issue should have been decided under the grievance procedure established in a different agreement. *See Babcock & Wilcox*, 826 F.2d at 963–64. We held that the argument was barred because it had not been timely raised in a motion to vacate. In this case, King Soopers is arguing that even if the arbitrator could hear the dispute, he did not have authority to order a remedy. But if untimeliness can bar a challenge that the arbitration agreement did not authorize the arbitrator to decide the merits of the dispute and impose a remedy, *a fortiori* it bars a challenge that the arbitration agreement, even if it authorized the arbitrator to decide the merits of the dispute, did not authorize the arbitrator to impose a remedy. We note that King Soopers

11

cites no case in which a court has held that a party to an arbitration agreement can raise such an argument to oppose enforcement of an arbitration award despite the party's failure to move to vacate the award within the limitations period.

To be sure, the lack of subject-matter jurisdiction of the federal court can be raised at any time; and King Soopers insists that the arbitrator's lack of authority deprives the federal court of subject-matter jurisdiction. But a lack-of-authority defense does not implicate federal-court jurisdiction. Federal courts have jurisdiction under § 301 over suits "that claim a [labor] contract has been violated." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto. Workers*, 523 U.S. 653, 657 (1998); *see United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987) ("The courts have jurisdiction to enforce collective-bargaining contracts . . . ."). Here, the Union claims that King Soopers violated the CBA by not complying with the arbitration award. Hence, its claim falls squarely within our jurisdiction under the LMRA. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957) (Section 301 was designed to "place[] sanctions behind agreements to arbitrate grievance disputes."). Once a federal court has § 301 jurisdiction, the defendant's affirmative defenses do not ordinarily deprive it of subject-matter jurisdiction. As the Supreme Court wrote in *Textron*:

> [Section 301(a)] simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse. Thus, if in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense.

12

523 U.S. at 657–58. If the federal court's jurisdiction is not impaired by the defense that the agreement to arbitrate is invalid, we fail to see how it could be impaired by the defense that the arbitrator exceeded his authority under a valid arbitration agreement. We conclude that King Soopers' argument does not raise a jurisdictional question.

Finally, at oral argument, King Soopers argued on policy grounds that it should be allowed to wait until an enforcement action before raising its objection to an arbitration award. It claimed that requiring it always to move to vacate an improper award would be a waste of resources because the Union may not bother to try to enforce the award. Not only is that argument contrary to our binding precedent in *Babcock & Wilcox*, it is also unpersuasive. King Soopers provides no evidence that unions regularly, or even occasionally, do not pursue their arbitration victories. If a union does not often bring actions to enforce awards, that is likely because employers generally comply. There is no evidence that there would be any significant saving in resources by allowing an employer to refuse to comply with an arbitration award and wait to see whether the union brings an enforcement action.

King Soopers could have raised its arguments in a motion to vacate. Its failure to do so forecloses it from raising them to challenge an enforcement action under § 301 initiated after the time to move to vacate had expired.

III.  CONCLUSION

We REVERSE with instructions to enforce the award.

13